466 P.2d 776

**William J. GARDENHIRE, Appellant,**

v.

**PHOENIX TITLE AND TRUST CO.,**
a corporation, Appellee.

**No. 2 CA–CIV 772.**

Court of Appeals of Arizona,
Division 2.

March 24, 1970.

Riley & Slaughter, Bisbee, for appellant.

Gentry, McNulty & Borowiec, by James F. McNulty, Jr., Bisbee, for appellee.

KRUCKER, Judge.

This is an action for breach of contract wherein appellant, plaintiff below, alleged failure to comply with certain escrow instructions given to appellee, defendant below. The case was tried to the court without a jury and resulted in a judgment in favor of the defendant. The only question raised on appeal is whether appellee violated its duty to appellant by the payment of the proceeds of the sale in the amount of $9,749.31 to appellant's former wife, Hazel Anne Gardenhire, now Hazel Anne Feldman, on the 24th day of July, 1963, under the escrow instructions.

The facts of the case are undisputed. Plaintiff and his former wife were divorced. They owned an undivided one-half interest in certain real property in Cochise County, Arizona. They sold the

**558**

property to a Mr. and Mrs. Dunlap by contract dated February 13, 1962. The principal amount of the contract was $18,000, payable by $5,000 cash and the balance in regular monthly instalments of $200 or more on the 20th day of each month, beginning May 20, 1962. The escrow instructions provide that future payments under the agreement be paid to "see special instructions in escrow file". The defendant was the escrow agent, and the special instructions delivered to the escrow agent included the method of payment for the plaintiff's share of the proceeds of the sale as evidenced by a letter dated March 30, 1962. These instructions were given to secure support payments to plaintiff's former wife for their three children. The instructions provided as follows:

"This letter will serve as my instructions to you as Escrow Agent in handling the sale of my property near Willcox, Arizona, to Mr. and Mrs. E. T. Dunlap of Willcox.

1. From my one-half interest in the $5,000 down-payment provided in the Agreement of Sale, you will pay to Hazel Anne Feldman the sum of $1,825.00, representing the amount due her in Civil Action No. 19510 in the Superior Court of Cochise County, under its order dated December 11th, 1961.

2. You are further instructed to deduct from my said interest in the down-payment my one-half of the Sellers' costs on closing this sale.

3. The balance remaining after payment of the foregoing sums from said down-payment is to be remitted to me at the address below.

"4. *You are to pay over my interest in each of the monthly payments of $200.00 to Hazel Anne Feldman for and as a partial payment on support and maintenance of my three dependent children,* namely: Anne May Gardenhire, Shirley Jo Gardenhire and Thomas D. Gardenhire. *This agreement for distribution of the monthly payments will con-*

*tinue until such time as the entire principal balance under the terms of the agreement is disbursed or the dependency of the three minor children is no longer existent to the extent of my interest in the monthly payments or until further notice from me,* provided, however, that I will not revoke these instructions for disbursement of my interest in the monthly payments without first giving you sixty (60) days notice thereof in writing. [Emphasis added]

My address is as follows:
William J. Gardenhire
3127 Forest Drive
Columbia, South Carolina"

A number of payments were made under the contract to escrow. In 1963, the buyers paid off the entire balance of the remainder due under the contract in the amount of $9,749.31.

In July, 1964, plaintiff visited his former wife for the purpose of seeking visitation with his three children and was informed by her that she did not know where the children were. Plaintiff learned from the welfare department that the children had been taken away from the mother and were under the supervision of the welfare department in various foster homes of the juvenile court. Upon learning this, and not wishing to pay further support payments for the children, the plaintiff notified the defendant that he rescinded the escrow instructions as to payment of money due his former wife as provided in the escrow instructions. He was notified by letter dated July 9, 1964, that the full payment under the real estate agreement had been made, and plaintiff's share had been remitted to his former wife on July 24, 1963.

The questions for decision by this court are whether the entire balance of the contract paid by the Dunlaps to the title company should have been remitted to plaintiff's former wife or if only the plaintiff's share of the monthly payments should have been remitted to her; and, if the title com-

pany was negligent in forwarding the entire balance to Mrs. Feldman without notifying or consulting the plaintiff.

 The escrow company was specifically confronted with the question of what was the intent of the escrow instructions. 28 Am.Jur.2d Escrow § 16. The escrow instructions in the instant case contained the information that the payments to the wife were in lieu of child support, which is a monthly payment. It also made clear that potentially the husband would never receive any funds under the contract but might find all of his rights to payment paid over as child support. Also tied to the escrow instructions was the contract of sale which provided that the buyers could accelerate or pre-pay the contract.

We believe that these three provisions on their face alone, tied together with a total prepayment, present an ambiguity of interpretation as to the intention of the husband, Gardenhire. We believe that once confronted with this ambiguity, the title company had a duty to call its principal for clarification.

▆ The general agency rule is that if an agent's authorization is ambiguous, he may act with good faith and escape responsibility if he misinterprets his principal's actual intent. 3 Am.Jur.2d Agency § 206; 3 C.J.S. Agency § 148. However, we point out that this rule, as spelled out in the Restatement of Agency, Second § 44, states that the agent may so act in good faith and with safety only if the ambiguity is because of facts of which he has no notice. However, it points out:

> " * * * If, at the time of acting, the agent should realize the possibility of conflicting interpretations, ordinarily he is not authorized to act, since it would be his duty to communicate with the principal and obtain more definite instructions."

We therefore hold that the escrow agent, appellee, had a duty to communicate with his principal, appellant, before disbursing the entire prepayment amounts, and failing to do so, failed in his duty to appellant.

Judgment reversed.

HOWARD, C. J., and HATHAWAY, J., concur.